**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| CHARLES VASTADORE and | : | Bankruptcy No. <u>09-29225JAD</u> |
| MARLENE VASTADORE, | : | |
| | : | Chapter 13 |
| | : | |
| Debtor(s) | : | Related to Doc. No. 192 |
| | : | |
| ********************************************* | X | |

**<u>MEMORANDUM OPINION</u>**

The matter before the Court is the proper disposition of funds presently held by the Chapter 13 Trustee (as a result of early termination of the of the Debtors' Chapter 13 plan). The Debtors have requested that the funds on hand be refunded to them. The Trustee has opposed such a request.

**I.**

This case has had somewhat of a tortured history. In the years leading up to this case, the Debtors had been in bankruptcy in two prior cases. In 2003, the Debtors hired attorney Jason Mazzei, Esq., who filed a chapter 7 case on their behalf and obtained a discharge. In 2008, the Debtors hired different counsel (attorney David Colecchia, Esq.) and commenced a chapter 13 case. In that case, the Debtors' relationship with prior counsel deteriorated. The end result was that the 2008 case was dismissed. The Debtors then re-retained attorney Mazzei and commenced the instant chapter 13 case on December 16, 2009.

Over the course of this case, the Debtors filed a total six (6) Chapter 13 plans, which were all confirmed by orders of the Court. The primary purpose of the plans were

00013732

to provide for the cure and reinstatement of the Debtors' mortgage. Secondary purposes behind the plans were to provide for other creditors, such as the creditor holding a lien on the Debtors' motor vehicle, counsel fees and an unknown or uncertain sum for unsecured creditors, if any.

The record further reflects that the Debtors participated in the Court's loss mitigation program ("LMP"), whereby the Debtors obtained a favorable mortgage modification at or near the conclusion of this case; and the Debtors successfully avoided their second mortgage, resulting in such claim being deemed wholly unsecured.

Fifty-one (51) months into this case, as a result of the successful mortgage modification and the avoidance of the second mortgage obligation, the Debtors were authorized to conclude their most recent iteration of their Chapter 13 Plan. The early conclusion of the plan, however, was not done without much consternation on the part of the Debtors.

The record reflects that the Debtors wrote numerous letters complaining about the level of services provided by counsel. The complaints of the Debtors included allegations that delays in the case were occasioned by counsel giving the Debtors the "run around," that counsel would not return phone calls, or that counsel was "stalling & making excuses" for the delays associated with the LMP process.[1]

A fair reading of the record, however, is that much of the misunderstanding between the Debtors and counsel in this regard is due to a lack of communication

---

[1] See Letter dated July 9, 2013 at Docket No. 102, Letter dated August 11, 2013 at Docket No. 117, Letter dated August 29, 2013 at Docket No. 118, Letter dated December 11, 2013 at Docket No. 127, Letter dated December 17, 2013 at Docket No. 133, Letter dated March 6, 2014 at Docket No. 158, Letter dated May 6, 2014 at Docket No. 185, Letter dated May 8, 2014 at Docket No. 186, Letter dated May 11, 2014 at Docket No. 188, Letter dated May 22, 2014 at Docket No. 198, Letter dated June 2, 2014 at Docket No. 200, Letter dated June 24, 2014 at Docket No. 205, and Letter dated July 20, 2014 at Docket No. 215.

between counsel on the one hand, and the Debtors on the other.  The Court reaches this conclusion because it appears that (a) much of the delays in the LMP process were due to actions or inactions of the creditor at issue and not attorney Mazzei or his office, (b) calls or letters from the Debtors to counsel either went unanswered or return communications were delayed, and (c) when calls were taken by counsel's office, they were received and/or returned by non-lawyer staff so that the Debtors, at times, did not have the benefit of advice from a lawyer regarding the bankruptcy and/or LMP process at moments when it would have been beneficial to the Debtors to be apprised as such.

The communication problem in this case was further exacerbated by the fact that not one person from Mr. Mazzei's law office handled this case from start to finish.  Rather, it was admitted by Mr. Mazzei that different personnel, including non-lawyer personnel, handled different aspects of the case.  For example, one person might have prepared the schedules, while another person handled loss mitigation, and yet another person might have been responsible for plan amendments or other similar events.  It therefore appears to the Court that the proverbial "right hand did not necessarily know what the left hand was doing."

Of course, the Court is mindful that counsel does operate a busy law office.  However, it appears that the breakdown of communication is what has caused much of the consternation and frustration on the part of the Debtors.  Had the level of attorney-client communication been better, more involved, and more consistent, perhaps the level of acrimony and dissatisfaction between the parties would not have been as great.

The complaints of the Debtors also included the fact that, without the express consent of the Debtors, counsel caused the Debtors' wages to be attached at a higher

amount than what was required.[2] In this regard, the record reflects that the Debtors were ultimately approved for a loan modification, that reduced the Debtors' payment obligation to their mortgagee. However, inexplicably, counsel filed an amended plan that increased (rather than decreased) the monthly payment obligations of the Debtors under their Chapter 13 plan. Counsel also filed an amended wage attachment providing for the attachment of wages at the higher sums, thereby causing the Debtors to write letters to the Court complaining, yet again, about legal counsel and the progress of this case.

After these complaints, the Court held a number of hearings and afforded the Debtors, their counsel, and the Chapter 13 Trustee an opportunity to be heard. The Court then vacated the higher wage attachment order and returned the Debtors' to the *status quo ante*, and counsel filed what became the sixth Chapter 13 plan in the case (which reduced the Debtors' payment obligations and reduced the plan term to fifty-one (51) months). The Court also authorized the Chapter 13 Trustee to refund (the "Refund") to the Debtors $2,198.31 in payments that the Debtors had involuntarily made, but were subject to as a result of the *ultra vires* wage attachment submitted by counsel.

As a result of these hearings, and with the consent of the Chapter 13 Trustee, the Court was persuaded that the sixth plan should be confirmed on April 25, 2014, that the Debtors had met their plan base and goals, and that a finding that the Debtors had completed their sixth plan as "paid in" was appropriate. The case did not end, however, because after payment of the Refund, and above and beyond the payment to secured creditors and other priority creditors, the Chapter 13 Trustee is holding $3,754.12 in

---

[2] This is troubling to the Court because Pennsylvania's Rules of Professional Conduct not only imposes a duty upon the lawyer to communicate with his or her client, it also requires that a lawyer "reasonably consult with the client about the means by which the client's objectives are to be accomplished; …" See Pa. R. Prof. Conduct 1.4(a)(2).

funds on hand (the "Funds on Hand"). It is these funds that the Debtors have requested be returned to the Debtors, and of which the Chapter 13 Trustee opposes.

## II.

Having canvassed the record in this case, and reviewing the accounting submitted by the Chapter 13 Trustee, the Court determines that the Chapter 13 Trustee's objection should be sustained and that the remaining Funds on Hand should be distributed *pro rata* to the unsecured creditors in accordance with the Chapter 13 Trustee's Amended Notice of Claims Filed and Intention to Pay Claims (filed at Docket No. 192).

The Court reaches this conclusion because the most recent iteration of the confirmed plan in this case states, in relevant part, the following:

> Debtor(s) UNDERSTAND that a MINIMUM of $0.00 shall be paid to unsecured, non-priority creditors in order to comply with the liquidation alternative test for confirmation. The total pool of funds estimated above is NOT the MAXIMUM amount payable to this class of creditors. Instead, the actual pool of funds available for payment to these creditors under the plan base will be determined only after audit of the plan at time of completion. The estimated percentage of payment to general unsecured creditors is 0%.

See Doc. #159, ¶16. Parenthetically, the Court would note that the parties are no strangers to such a provision in the sixth plan as this provision of the confirmed plan is contained in all of the prior Chapter 13 plans proposed by the Debtors, and confirmed by orders of this Court.

What is clear by this provision of the confirmed plan is that while the plan estimated that no distribution would be made to unsecured creditors, the confirmed plan fixed neither a minimum nor maximum distribution to unsecured creditors. The import of this provision of the confirmed plan is that the ultimate distribution to unsecured creditors was left to the conclusion of the case when the universe of claims had been

established and all the payments had been made by the Debtors. The net effect is that the Debtors' sixth plan (as like their prior plans) was a "pot plan."

A "pot plan" is a defined contribution plan where the amount paid by the debtor is fixed, and the dividend paid to creditors can vary based upon the universe of claims filed and allowed. See e.g., In re Stamm, 265 B.R. 10, 13 (Bankr. D. Mass 2001) (citing the "no less than" language as a basis for finding the plan was a pot plan); see also In re Puglia, No. 04-13438, 2006 WL 849879 at *4 (Bankr. D. Mass. Mar. 28, 2006)(same). Courts have held that pot plans more closely reflect Congressional intent that debtors repay creditors through a defined contribution, that is the debtors' disposable income. In re Stamm, 265 B.R. at 12 (citing In re Barbosa, 236 B.R. 540 (Bankr. D. Mass. 1999) and In re Martin, 232 B.R. 29, 34 (Bankr. D. Mass. 1999)); see also Barbosa v. Solomon (In re Barbosa), 243 B.R. 562, 569 (D. Mass. 2000), aff'd 235 F.3d 31 (1st Cir. 2000).

In this case, the Debtors fully funded their "pot plan" and now want to empty the pot away from the creditors. Such a result is not appropriate because the Funds on Hand are property of the bankruptcy estate pursuant to 11 U.S.C. §1306 and are for the benefit of the creditors under the plan. This conclusion is particularly acute since the confirmed plan, at the section titled "General Principles Applicable to All Chapter 13 Plans," provides that property of the estate shall not re-vest in the Debtors until the bankruptcy is closed.

**III.**

The Court's determination that the Funds on Hand should be distributed to the creditors is further supported by the doctrine of *res judicata*. Section 1327 of the Bankruptcy Code provides that the provisions of a confirmed plan "bind the debtor and each creditor." 11 U.S.C. §1327(a). The April 25, 2014 order confirming the Debtors'

sixth plan[3] did not make any modifications to the plan. Therefore, pursuant to 11 U.S.C. §1327(a), the Debtors and creditors are both bound by the confirmed plan.

Further, confirmation of the plan vests all of the property in the debtor *except* as otherwise provided in the plan or confirmation order. 11 U.S.C. §1327(b). As described above, the sixth plan did provide for an exception to the vesting rules. The amended plan specifically stated that no property re-vests in the Debtors until the case is *closed*– not upon confirmation. Thus, even at the time of, and after confirmation of the Debtors' sixth plan, the Debtors' property (namely their earnings) remained vested in the estate and remained available for distribution to creditors. See In re Smith, 334 B.R. 26, 39 (Bankr. D. Mass. 2005)(contrary to debtors' assertion, there is no absolute right to vesting of property prior to discharge and property does not vest upon confirmation if the court orders otherwise).

### IV.

The facts of this case reflect that the result of the modification of the first mortgage, and avoidance of the second mortgage, the Debtors' plan payments created a pot of funds for the benefit of creditors. Requiring the Chapter 13 Trustee to make a *ratable* distribution of such funds to creditors holding allowed claims is consistent with the outcome obtained in similar cases where debtors have sought a refund of funds held by chapter 13 trustees in the "pot plan" context.

For example, in In re Bacon, 274 B.R. 682 (Bankr. D. Md. 2002), the debtor refinanced her mortgage resulting in two secured creditors being paid in full. The facts of Bacon were that payments to the secured creditors from the chapter 13 trustee prior

---

[3] For purposes of clarity, the sixth plan is the Amended Plan dated March 7, 2014 and is found at Docket No. 159.

to the refinancing were either returned or not negotiated by the secured creditors. As a result, the trustee held funds such that only $22,567 of the required $24,000 had been distributed. The debtor asserted entitlement to funds that had been refunded to the chapter 13 trustee by the secured creditors after the mortgage refinancing, even though the plan called for unsecured creditors to receive a *pro rata* distribution after payment to secured creditors. The court in Bacon found that absent modification, the unsecured creditors were entitled to their *pro rata* share of the funds since the debtor did not modify her plan to provide otherwise. Additionally, adequate notice was provided by the trustee that the monies resulting from the refinancing would be distributed in this manner. Because the unsecured creditors had not been paid in full, it was determined that they were entitled to a *pro rata* distribution from the monies held by the trustee.

Similarly, in In re Smith, supra., the debtors sought the return of monies that were an overpayment to a secured creditor resulting from refinancing and prior plan payments. The facts of Smith reflected that the debtors refinanced their mortgage, reduced the plan payment and term, and confirmed a plan that provided a minimum of ten percent to unsecured creditors. The court found that the debtors were judicially estopped from contending that they could limit the dividend to the unsecured creditors since it is was the debtors' own calculation of the plan payment that resulted in a dividend to unsecured creditors. As long as there were creditors who had not been paid in full, the debtors were obligated to make payments to them consistent with the "pot plan" at issue. The court in Smith concluded that the confirmation orders for the plan and amended plans were valid and binding and not subject to challenge beyond the appeal period. In re Smith, 334 B.R. at 37-40; see also In re Ryan, 431 B.R. 1 (Bankr. D. Mass. 2010).

In the matter *sub judice*, the Court sees no reason why an outcome similar to the one in Bacon or Smith should not be required. It is true that the Debtors in the instant case have vigorously complained about actions or inactions of counsel.[4] But the Court need not rule on the merits of such contentions because those complaints do not (as a legal matter) justify the *vacatur* of this Court's prior orders confirming the Debtors' plans. See e.g. In re Babcock, 258 B.R. 646, 650 (Bankr. E.D. Va. 2001)(relief from judgment pursuant to Fed.R.Civ. P. 60(b) not warranted when judgment is the result of acts or omissions of counsel); see also In re Virginia Stumpo, Case No. 05-32045-JAD, Doc. #57 (Bankr. W.D. Pa. Apr. 7, 2008)(same). The fact remains that the confirmed plan is binding not only upon all the creditors, but also the Debtors. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S.Ct. 1367, 1380 (2010).

*[Remainder of Page Intentionally Left Blank]*

---

[4] By way of example, the Debtors complain that some of the Funds on Hand will be used to pay a *pro rata* distribution to their former counsel. In this regard, the Debtors complain that counsel failed to object to former counsel's claim prior to the deadline for doing so. As a result, the claim is *prima facie* allowed.

**V.**

For all of the reasons set forth above, an Order shall be entered which sustains the Chapter 13 Trustee's objection and which authorizes the Chapter 13 Trustee to complete final distribution of the Funds on Hand consistent with the Chapter 13 Amended Plan dated March 7, 2014 (i.e., as set forth in the Chapter 13 Trustee's Amended Notice of Claims Filed and Intention to Pay Claims (filed at Docket No. 192)).

Dated: September 24, 2014     /S/ JEFFERY A. DELLER
THE HONORABLE JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge

FILED
9/24/14 2:22 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH

case administrator to serve:

Charles and Marlene Vastadore
Jason J. Mazzei, Esq.
Paul McElrath, Esq.
Ronda J. Winnecour, Esq., Chapter 13 Trustee
Office of the U.S. Trustee